**CT Corporation**

**Service of Process Transmittal**
03/27/2015
CT Log Number 526835116

TO:     Josh Vitullo
        Electric Insurance Company
        75 Sam Fonzo Dr
        Beverly, MA 01915-1000

RE:     **Process Served in Illinois**

FOR:    General Electric Company (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Mickeal Varnum, Pltf. vs. Air & Liquid Systems Corporation, etc., et al. including General Electric Company, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Affidavit, Entry, Demand, Notice, Proof(s) of Service, Motion |
| **COURT/AGENCY:** | Madison County - 3rd Judicial Circuit Court, IL<br>Case # 2015L000263 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/27/2015 at 10:00 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Erica Mynarich<br>Carver, Cantin & Grantham<br>901 East St. Louis<br>Suite 1600<br>Springfield, MO 65806<br>417-831-6363 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/27/2015, Expected Purge Date: 04/01/2015<br>Image SOP<br>Email Notification, Brigid Esposito besposito@sidley.com<br>Email Notification, Meredith Dudley mdudley@sidley.com<br>Email Notification, Cassandra Flavin cflavin@armstrongteasdale.com<br>Email Notification, Greg Iken giken@armstrongteasdale.com<br>Email Notification, Mike Horton mhorton@sidley.com<br>Email Notification, Carol Light Carol.Light@electricinsurance.com<br>Email Notification, Josh Vitullo joshua.vitullo@ge.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **TELEPHONE:** | 312-345-4336 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

60

CK# 3266

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

MICKEAL VARNUM,                    )
                                   )                    2015L 000263
            Plaintiff,             )
                                   )
VS.                                )          CASE No.
                                   )
AIR AND LIQUID SYSTEMS, INC.,      )
As Successor-in-Interest to Buffalo )
Pumps, Inc., et al.                )
                                   )
            Defendants.            )

TO:   GENERAL ELECTRIC COMPANY
      c/o CT Corporation System (registered agent)
      208 S. LaSalle St., Suite 814              **RUSH**
      Chicago, IL 60604

        You are hereby summoned and required to file an answer in this case, or otherwise
file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after
service of this summons, exclusive of the day of service. If you fail to do so, a judgment or
decree by default may be taken against you for the relief prayed in the complaint.

        This summons may not be served later than 30 days after its date.

| WITNESS: MARK VON NIDA, the Clerk of the Circuit Court and the seal |
| thereof at Edwardsville, Illinois.         Mar 02 2015 04:02PM |
| MARK VON NIDA - Clerk of the Circuit Court |
| *M. Downs* |
| Deputy Clerk |

Erica Mynarich
Carver, Cantin & Grantham
901 East St. Louis, Suite 1600
Springfield, MO 65806
Ph: (417) 831-6363
Fax: (417) 831-7373

Date of Service: _____, 20____    FOREIGN
(To be inserted by officer on the copy left with the defendant or other person)

**DIE DATE**
03/30/2015

**DOC.TYPE:**   LAW |
**CASE NUMBER:**   15L000263
**DEFENDANT**
GENERAL ELECTRIC COMPANY
208 S LASALLE ST
CHICAGO, IL 60604
STE 814

**SERVICE INF**
CT CORP

**ATTACHED**

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

MICKEAL VARNUM,                                    )
                                                   )
    Plaintiff,                 )
                                                   )
-vs.-                                              )     NO. _____
                                                   )
AIR AND LIQUID SYSTEMS, INC., As                   )
    Successor-in-Interest to Buffalo Pumps, Inc.   )
AURORA PUMP COMPANY;                               )
CARRIER CORP.;                                     )
CBS CORPORATION, f/k/a VIACOM, INC.,               )
    successor by merger to CBS             )
    CORPORATION, f/k/a WESTINGHOUSE        )
    ELECTRIC CORPORATION, Individually     )
    and as Successor-in-Interest to BF     )
    STURTEVANT CO;                         )
CRANE CO., Individually and as Successor-in-       )
    Interest to DEMING PUMP CO.,           )
    COCHRANE CORPORATION and               )
    CHAPMAN VALVE CO.;                     )
DRAVO CORPORATION;                                 )
ELECTROLUX HOME PRODUCTS, INC.,                    )
    Individually and as Successor-in-Interest to   )
    COPES-VULCAN, INC.;                    )
FOSTER WHEELER, L.L.C.;                            )
GENERAL ELECTRIC COMPANY;                          )
GOULDS PUMPS, INC;                                 )
HONEYWELL INTERNATIONAL, INC., as                  )
    Successor to BENDIX CORPORATION;       )
IMO INDUSTRIES, INC., Individually and as          )
    Successor-in-Interest to DELAVAL       )
    TURBINE, INC.;                         )
INGERSOLL-RAND COMPANY, Individually               )
    and as Successor to TERRY STEAM        )
    TURBINE COMPANY;                       )
ITT CORPORATION, as Successor-in-Interest          )
    to FOSTER ENGINEERING;                 )
JOHN CRANE INC.;                                   )
JOHNSON CONTROLS, INC., as Successor-              )
    in-Interest to YORK INTERNATIONAL,     )
    INC.;                                  )
METROPOLITAN LIFE INSURANCE CO.;                   )

OWENS-ILLINOIS, INC.;
STRAHMAN VALVES, INC.;
VELAN VALVE CORP.;
WARREN PUMPS, L.L.C.;

        Defendants.

## COMPLAINT

### GENERAL ALLEGATIONS AS TO ALL COUNTS

Now comes the Plaintiff, MICKEAL VARNUM, by his attorneys, Carver Cantin & Grantham,

and for his cause of action against the Defendants, states:

    1.    The Plaintiff, MICKEAL VARNUM, resides at ███████████████████

███████████

    2.    The Plaintiff was employed from about 1962-66 with the United States Navy.  He was

exposed to Defendants' asbestos throughout 1962 until about 1967.  He joined the Navy at 17 years of

age on October 29, 1962.  His training was in San Diego, CA in 1962.  He served aboard the USS

Wright CC-2 in the Bremerton/Puget Sound Naval Shipyard from about end of February 1963 until

about November 1963.  He worked as a FN/BT in Number 2 Boiler Room out of four.  The USS

Wright then went through Panama Canal, visited the Virgin Islands in about November 1963, then

San Juan, P.R. in about December of 1963, then Norfolk/Newport News, VA Navy Yard for about

three months from December until about February of 1963.  The Wright then went to Portsmouth, VA

Navy Yard in December 1963 for about a year and a half immediately thereafter.  Mr. Varnum then

transferred to the USS Sims DDG-18 for about six or seven months.  After that, he took a six month

Mediterranean cruise back to Portsmouth for the refitting of the Simms from about June - December

1966, when he left the service.  He served throughout these periods as a FN/BT.  He worked with all

Defendant's products with the exception of Bendix brakes while in the Navy.  For about six months

after leaving the Navy beginning in about December, 1966, Mr. Varnum worked at Riegel Textile

Corporation in Ware Shoals, SC. He worked on diesel truck brakes, including Bendix brakes during this time. He worked at a truck barn in Ware Shoals, SC on East Main Street.

    3.      During the course of his employment at the locations mentioned above, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold, distributed, installed or promoted by the Defendants: AIR AND LIQUID SYSTEMS, INC.; AURORA PUMP COMPANY; CARRIER CORP.; CBS CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, Individually and as Successor-in-Interest to BF STURTEVANT CO.; CRANE CO., Individually and as Successor-in-Interest to DEMING PUMP CO., COCHRANE CORP, and CHAPMAN VALVE CO.; DRAVO CORP.; ELECTROLUX HOME PRODUCTS, INC., Individually and as Successor-in-Interest to COPES-VULCAN, INC.; FOSTER WHEELER, L.L.C.; GENERAL ELECTRIC COMPANY; GOULDS PUMPS, INC.; IMO INDUSTRIES, INC., Individually and as Successor-in-Interest to DELAVAL TURBINE, INC.; INGERSOLL-RAND COMPANY, Individually and as Successor to TERRY STEAM TURBINE COMPANY; ITT CORPORATION, as Successor-in-Interest to FOSTER ENGINEERING; JOHN CRANE INC.; JOHNSON CONTROLS, INC., as Successor-in-Interest to YORK INTERNATIONAL, INC.; METROPOLITAN LIFE INSURANCE CO.; OWENS-ILLINOIS, INC.; STRAHMAN VALVES, INC.; VELAN VALVE CORP.; and WARREN PUMPS, L.L.C.

    4.      Defendant Air and Liquid Systems, Inc. is a foreign corporation organized in Michigan authorized to do business in the State of Illinois.

    5.      Defendant Air and Liquid Systems, Inc. may be served by and through their registered agent James E. Miller, 1680 S. Livernois Suite 200, Rochester Hills, MI, 48307.

6.     Defendant Aurora Pump Company is a foreign corporation organized in the North Carolina authorized to do business in the State of Illinois.

7.     Defendant Aurora Pump Company may be served by and through their registered agent Lynette Jones, 13320 Ballantyne Corporate Place, Charlotte, NC, 28277.

8.     Defendant Buffalo Pumps, Inc. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

9.     Defendant Buffalo Pumps, Inc. may be served by and through their registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St.; Wilmington, DE, 19801.

10.     Defendant Carrier Corporation is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

11.     Defendant Carrier Corporation may be served by and through their registered agent the CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL, 60604.

12.     Defendant CBS Corporation is a foreign corporation organized in the State of Pennsylvania authorized to do business in the State of Illinois.

13.     Defendant CBS Corporation may be served by and through their registered agent CT Corporation System located at 208 South LaSalle Street, Suite 814; Chicago, Illinois 60604.

14.     Defendant Crane Co. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

15.     Defendant Crane Co. may be served by and through their registered agent CT Corporation System located at 208 South LaSalle Street, Suite 814; Chicago, Illinois, 60604.

16.     Defendant Dravo Corporation is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

17.   Defendant Dravo Corporation may be served by and through their registered agent for service of process is National Registered Agents, Inc., 160 Greentree Dr., Ste. 101; Dover, DE 19904.

18.   Defendant Electrolux Home Products, Inc. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

19.   Defendant Electrolux Home Products, Inc. may be served by and through their registered agent the CT Corporation System, 208 S. LaSalle St., Suite 814; Chicago, IL, 60604.

20.   Defendant Foster Wheeler L.L.C. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

21.   Defendant Foster Wheeler L.L.C. may be served by and through their registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St.; Wilmington, DE, 19801.

22.   Defendant General Electric Company is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

23.   Defendant General Electric Company may be served by and through their registered agent the CT Corporation System, 208 So. LaSalle St., Suite 814; Chicago, IL, 60604.

24.   Defendant Goulds Pumps, Inc. is a foreign corporation authorized to do business in the State of Delaware authorized to do business in the State of Illinois.

25.   Defendant Goulds Pumps, Inc. may be served by and through their registered agent the CT Corporation System, 208 So. LaSalle St., Suite 814, Chicago, IL, 60604.

26.   Defendant Honeywell International, Inc. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

27.   Defendant Honeywell International, Inc. may be served by and through their registered agent the Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, IL, 62703.

28.     Defendant Ingersoll-Rand Company is a foreign corporation organized in the State of New Jersey authorized to do business in the State of Illinois.

29.     Defendant Ingersoll-Rand Company may be served by and through their registered agent located at CT Corporation System, 208 S. LaSalle St., Ste. 814, Chicago, IL, 60604.

30.     Defendant IMO Industries Inc. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

31.     Defendant IMO Industries Inc. may be served by and through their registered agent CT Corporation System located at 208 South LaSalle Street, Suite 814; Chicago, Illinois 60604.

32.     Defendant ITT Corporation is a foreign corporation organized in the State of Indiana authorized to do business in the State of Illinois.

33.     Defendant ITT Corporation may be served by and through their registered agent the CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL, 60604.

34.     Defendant John Crane Inc. is a Delaware corporation with its principal place of business located at 6400 Oakton St., Morton Grove, IL, 60053

35.     Defendant John Crane Inc. may be served by and through their registered agent CT Corporation System located at 208 South LaSalle Street, Suite 814; Chicago, Illinois 60604.

36.     Defendant Johnson Controls, Inc. is a foreign corporation organized in the State of Wisconsin authorized to do business in the State of Illinois.

37.     Defendant Johnson Controls, Inc. may be served by and through their registered agent the CT Corporation System, 208 S. LaSalle St., Suite 814; Chicago, IL, 60604.

38.     Defendant Metropolitan Life Insurance Company is a foreign corporation organized in the State of New York authorized to do business in the State of Illinois.

39.      Defendant Metropolitan Life Insurance Company may be served by and through their registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE, 19801.

40.      Defendant Owens-Illinois, Inc. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

41.      Defendant Owens-Illinois, Inc. may be served by and through their registered agent CT Corporation System located at 208 South LaSalle Street, Suite 814; Chicago, Illinois, 60604.

42.      Defendant Strahman Valves, Inc. is a foreign corporation organized in the State of Pennsylvania authorized to do business in the State of Illinois.

43.      Defendant Strahman Valves, Inc. may be served by and through their registered agent Robert Jordan at 2801 Baglyos Circle, Bethlehem, PA, 18020.

44.      Defendant Velan Valve Corp. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

45.      Defendant Velan Valve Corp. may be served by and through their registered agent located at The Corporation Service Company, 2711 Centerville Rd. Ste. 400, Wilmington, DE, 19808.

46.      Defendant Warren Pumps L.L.C. is a foreign corporation organized in the State of Delaware authorized to do business in the State of Illinois.

47.      Defendant Warren Pumps L.L.C. may be served by and through their registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE, 19801.

## COUNT I
## NEGLIGENCE

48.      Plaintiff restates and re-alleges paragraphs 1 through 47 above as though fully set forth herein as Count I of his Complaint and also states as follows.

49.     At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

50.     The Plaintiff's exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

51.     The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

52.     That on October 15, 2014 Plaintiff learned he had Lung Cancer, and that at a subsequent time learned said disease was wrongfully caused.

53.     At all times herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of the Plaintiff and others working with and around the products of the Defendants containing asbestos.

54.     The Defendants failed to exercise ordinary care and caution for the safety of the Plaintiff in one or more of the following respects:

(a)     Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Plaintiff working with or around them would inhale, ingest or otherwise absorb great amounts of that asbestos;

(b)     Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

(c)     Included asbestos in their products when adequate substitutes for the asbestos in them was available;

(d)     Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

(e)     Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

(f)     Failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers such as the Plaintiff might be exposed while working with the products.

55.     That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing Plaintiff to develop Lung Cancer; the Plaintiff, has been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Plaintiff, experiences great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Plaintiff has been hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would accrue to him and his estate; lastly, by reason of the Lung Cancer of the Plaintiff, his family has been deprived of his well-being.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as and for economic damages which will fairly and reasonably compensate for the Plaintiff's injuries and for such other relief as this Court deems just and proper.

## COUNT II - STRICT LIABILITY

56.     The allegations in paragraphs one (1) through fifty-five (55) are re-alleged and incorporated by reference within this Count.   Plaintiff MICKEAL Varnum's recovery herein is predicated upon the substantive law of the State of Illinois or such law as the Court holds to be

applicable. In no way does Plaintiff allege his claim or predicate his recovery upon Maritime Law of the United States.

57.     At the time Defendants and each and all defendants used, installed, manufactured, sold and distributed the asbestos-containing products to which Plaintiff was exposed, said products were in a defective condition and unreasonably dangerous in that:

(a)     Said products contained friable asbestos fibers as a constituent substance;

(b)     Said fibers were highly toxic, deleterious, poisonous and harmful to the health of Plaintiff and others similarly situated; and

(c)     Said products were not accompanied by any warning/instructions or by inadequate warning/instructions advising of the danger of exposure to asbestos or of precautions to be employed in the use of asbestos-containing products.

58.     Said products reached the point of Plaintiff's exposure in substantially the same condition as when defectively designed, used, manufactured, distributed, and sold.

59.     At all times relevant hereto, said products were used in the manner and environment intended, and in the manner reasonably foreseeable and anticipated by Defendants and each of them.

60.     Defendants are strictly liable to Plaintiff for all injuries and damages that were contracted as a direct and proximal result of Plaintiff's exposure to asbestos from said products.

61.     Asbestos and asbestos-containing products are inherently dangerous and as such all defendants who made or sold asbestos or the equipment, processes or other things necessary for its use, are strictly liable to Plaintiff for all injuries and damages which were contracted thereby.

62.     All defendants who assisted, directly or indirectly, in the leasing or licensing of asbestos, asbestos-containing products and all equipment necessary for their use are strictly liable to Plaintiff for all the injuries and damages which were contracted thereby.

63.     The handling of asbestos packages, installation, removal and use of asbestos and asbestos-containing products is an ultra-hazardous activity and all Defendants who assisted directly or

indirectly in this are strictly liable for the Plaintiff's injuries which were caused thereby.

64.    The Defendant manufacturers and suppliers warranted the asbestos products for their intended purpose and use. Defendants violated this warranty as the product was neither packaged nor provided in a method proper for its intended use and are strictly liable to the Plaintiff for all injuries caused thereby.

65.    As a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of Defendants, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Plaintiff to develop Lung Cancer, which disabled and disfigured Plaintiff. Plaintiff was compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his lung cancer. Plaintiff experienced great physical pain and mental anguish as a result of his Lung Cancer.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants each of them, jointly and severally, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, which will fairly and reasonably compensate for the Plaintiff's injuries together with costs herein expended and for such other relief and this Court deems just and proper.

## COUNT III
## WILLFUL AND WANTON COUNT

The allegations in paragraphs one (1) through sixty-five (65) are re-alleged and incorporated by reference within this Count. Plaintiff MICKEAL Varnum's recovery herein is predicated upon the substantive law of the State of Illinois or such law as the Court holds to be applicable. In no way does Plaintiff allege his claim or predicate his recovery upon Maritime Law of the United States.

66.    Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct:

(a)     Intentionally or with reckless disregard for the safety of Plaintiff, included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Plaintiff working with or around them would inhale, ingest or otherwise absorb great amounts of that asbestos;

(b)     Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

(c)     Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in the products when adequate substitutes for the asbestos in them was available;

(d)     Intentionally or with a reckless disregard for the safety of Plaintiff, failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

(e)     Intentionally or with a reckless disregard for the safety of Plaintiff, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

(f)     Intentionally or with a reckless disregard for the safety of Plaintiff, failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers such as the Plaintiff might be exposed while working with the products.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS which will fairly and reasonably compensate for the Plaintiff's injuries and for such other relief as this Court deems just and proper.

**COUNT IV**
**CONSPIRACY AGAINST DEFENDANT**
**METROPOLITAN LIFE INSURANCE COMPANY**

COMES NOW Plaintiff by his attorneys of record and for Count IV and for his cause of action against the Defendant METROPOLITAN LIFE INSURANCE COMPANY states as follows:

67.     Plaintiff repeats and re-alleges Paragraphs 1 through 66 above as though fully set forth herein as Count IV of his Complaint.

68.     During the course of his employment, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold or distributed by the Defendants named in Count I above.

69.     The Defendants, including METROPOLITAN LIFE INSURANCE COMPANY, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure the Plaintiff in the following manner.

70.     Beginning in the late 1920's, the conspirators, Johns-Manville, Raybestos-Manhattan, Metropolitan Life Insurance Company, Pneumo Abex L.L.C., as successor-in-interest to Abex Corporation, Garlock, Inc., and others conducted research on asbestos-related health problems and as a result undertook a duty to inform the consuming public about any health risks that could be associated therewith. In approximately 1929, the conspirator, Metropolitan Life Insurance Company, through its agents and employees acting within the scope of their employment, notably Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards in the United States, by studying asbestos mines in Canada and on the Eastern seaboard of the United States. In 1935, this study was altered by Lanza, with the full knowledge of Metropolitan, at the request of and in concert with the asbestos industry, and the conspirators named herein in order wrongly to influence the United States Public Health Service, the United States medical community and various state legislatures, including the New Jersey Worker's Compensation Commission. At all times mentioned herein, Metropolitan Life Insurance Company was the general medical, disability and life insurance carrier, both occupational and non-occupational, for the conspirators Johns-Manville in the U.S. and Canada, and Raybestos-Manhattan, as well as others in the industry.

71.     Dr. Lanza's omission of any citation to the significant English literature from his 1935 published report was a continuation of the policy of Metropolitan Life and its co-conspirators to misrepresent and suppress relevant information about the seriousness of Lung Cancer disease, especially to asbestos industry employees and consumers of asbestos products.

72.     The following conspirators were members of the trade association known as the Quebec Asbestos Mining Association ("Q.A.M.A."): Johns-Manville Corporation, Carey Canada, individually and as successor to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall, individually and successor to Bell Asbestos.   These conspirators, members of the Q.A.M.A., participated in the above-described material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the AMA Archives of Industrial Health in 1951.  Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring of the editing process of Dr. Gardner's work by Q.A.M.A.'s representative, Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with the Metropolitan Life Insurance Company and Dr. Anthony J. Lanza.

73.     In addition to the above described actions, the conspirators, through their agent, Dr. Anthony J. Lanza of the Metropolitan Life Insurance Company, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing data of profound importance for the area of public health in relation to the lung cancer hazard which in fact did exist for workers and bystanders in the asbestos industry.

74.     Because of the above-described efforts of Dr. Lanza of Metropolitan Life, and the other co-conspirators, many other active scientists in the field of environmental cancer were driven out of

their laboratories soon after describing their findings on cancer hazards of asbestos/industrial health origin. This included Dr. Genitt Schepers, who had conducted in-patient studies in South Africa. (Lanza and Vandiver Brown suppressed the publication of Schepers' work while Schepers was affiliated at New York University.) These efforts wrongfully obstructed and confused the real asbestos hazard situation, and had a profound retarding effect on the evaluation of the truth in asbestos and asbestos-related health and cancer research.

75.   In addition to all allegations above, the conspirators actively suppressed publications concerning Lung Cancer in the Asbestos Magazine, a trade magazine and important source of information to the public, and also to users of asbestos products, including users such as the Plaintiff herein. This magazine was read by sales and marketing personnel in the asbestos industry.

76.   The acts of the defendant conspirators, as described above, constitute a fraudulent misrepresentation/concealment which proximately caused the injuries to the Plaintiff in the following manner:

(a)   The material published or caused to be published by the conspirators was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

(b)   The Defendants individually, as members of a conspiracy, and as agents of other co-conspirators, intended the publication of false and misleading reports, and/or the nondisclosure of documented reports of the health hazards of asbestos:

1.   To maintain a favorable atmosphere for the continued sale and distribution and use of asbestos and asbestos-related products;

2.   To assist in the continued pecuniary gain of the Defendants through the sale of asbestos products to an ignorant public;

3.   To influence in the Defendants' favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation;

4.   To provide a defense in lawsuits brought for injury resulting from asbestos disease;

5.   To prevent relevant medical inquiry about asbestos disease;

6.     To mislead the general public, and the Plaintiff herein, about the hazards associated with asbestos products; and

7.     To induce the Plaintiff to use and continue to use asbestos products.

(c)     The Plaintiff reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products to asbestos because Plaintiff believed it to be safe.

(d)     Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators, intended that the Plaintiff rely upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue their exposure to those products.

(e)     Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators, were in a position of superior knowledge regarding the health hazards of asbestos and therefore the Plaintiff and others deciding to use said asbestos-containing products to which Plaintiff was exposed had a right to rely and did rely on the published reports commissioned by the Defendant regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

(f)     Plaintiff suffered injuries as a direct and proximate result of the acts alleged above.

77.     As a direct and proximate result of Metropolitan Life's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data the Plaintiff reasonably relied, the Defendant caused asbestos and/or asbestos-containing products to be used by Plaintiff and Plaintiff has inhaled or otherwise ingested hazardous asbestos dust, and/or will inhale or ingest hazardous asbestos dust, resulting in injuries.

78.     Additionally and alternatively, as a direct and proximate result of Metropolitan Life's actions and omissions as described above, the Plaintiff was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiff by depriving the Plaintiff, his agents, employees and the general public, of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos

dust. Because of this ignorance on the part of the Plaintiff, Metropolitan Life's failure to warn, Metropolitan Life's concealment from the Plaintiff of the alteration of its published test results, and the actions and omissions and concerted design and conspiracy of Metropolitan Life and others, all as described above, the Plaintiff was occupationally exposed to asbestos and/or asbestos-containing products used at his places of employment and has inhaled or otherwise ingested hazardous asbestos dust resulting in his developing Lung Cancer.

79.     That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing Plaintiff to develop Lung Cancer, the Plaintiff, was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Plaintiff experiences great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Plaintiff has been hindered from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him and his estate; lastly, his family has been deprived of his well-being.

WHEREFORE Plaintiff prays judgment in a sum in excess of Fifty Thousand Dollars ($50,000.00) against the named Defendants jointly and severally exclusive of costs and interest, as is fair and reasonable to compensate his for the claims set forth herein, plus aggravated (punitive) damages together with his costs and for such other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

*/s/ Erica Mynarich*
Erica Mynarich, # 6297271
Carver, Cantin & Grantham
901 East St. Louis, Suite 1600
Springfield, MO 65806
Ph: (417) 831-6363
Fax: (417) 831-7373
erica@c2glaw.com
*Attorneys for Plaintiff*