UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICKEAL VARNUM,<br><br>Plaintiff,<br><br>vs.<br><br>AIR & LIQUID SYSTEMS, INC., As Successor-in-Interest to Buffalo Pumps, Inc., et al.,<br><br>Defendants. | ) | No. 3:15-cv-00450-NJR-DGW<br><br>JURY TRIAL DEMANDED |

**GENERAL ELECTRIC COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant General Electric Company ("GE"), by counsel, submits this brief in opposition to Plaintiff's Motion to Remand and Memorandum in Support thereof ("Motion to Remand") (Doc. 60). GE removed this case pursuant to 28 U.S.C. § 1442(a)(1). The Court should deny Plaintiff's Motion to Remand because it applies the wrong legal rules and therefore fails to show that GE's notice of removal was improper.

**PROCEDURAL BACKGROUND**

Plaintiff filed his complaint in the Third Judicial Circuit, Madison County, Illinois on March 2, 2015. GE was served on March 27, 2015. Plaintiff's Complaint alleges that Plaintiff was exposed to asbestos-containing products manufactured, distributed and sold by Defendants, and that exposure caused his asbestos-related disease. In addition, Plaintiff claims that Defendants, including GE, failed to warn Plaintiff of the hazards related to asbestos exposure. On April 22, 2015, GE timely filed its notice of removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* GE's Notice of Removal (Doc. 1). Plaintiff filed his Motion to Remand on May 26, 2015.

Removal in this case is governed by the Seventh Circuit's ruling in *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012). In that case, Westinghouse (a/k/a CBS) was sued in state court based on the sale of turbines to the United States Navy for installation aboard Navy warships. Westinghouse removed the case pursuant to 28 U.S.C. § 1442(a)(1) asserting that it was a person acting under an officer of the United States or an agency thereof. *Id.* at 1178-79. Westinghouse asserted it had manufactured the turbines pursuant to stringent military specifications in accordance with government contracts. The Seventh Circuit reversed the district court, holding that Westinghouse's removal was proper. *Ruppel*, 701 F.3d at 1185-86.

In this case, as in *Ruppel*, Plaintiff has sued GE based upon alleged asbestos exposure associated with shipboard steam turbines which GE manufactured and sold to the United States Navy in accordance with military specifications under government contracts. GE removed this action based on federal officer removal. However, Plaintiff fails to grapple with the Seventh Circuit's controlling authority for federal officer removal cases, *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012). Indeed, he does not even mention that decision. Plaintiff's Motion to Remand must be denied under the principles laid down by the Seventh Circuit in *Ruppel*. The Court should, therefore, find that the motion to remand, under *Ruppel*, is without merit and deny the motion.

## ARGUMENT

### I. Plaintiff's Motion To Remand Is Defective Because It Misstates The Law And Applies The Wrong Standard.

Plaintiff has misstated the law in his Motion to Remand. He argues that the removal statute is to be strictly construed, with all doubts resolved against removal and that there is a strong presumption in favor of remand. (*See*, Doc. 60.) This is not accurate in the context of federal officer removal. Just the opposite is true. *See Ruppel*, 701 F.3d at 1180 ("[t]he federal

officer removal statute is not 'narrow' or 'limited'") (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)) (internal quotation marks omitted). One of the purposes of the federal officer removal statute is to ensure that federal officers are provided a federal forum to litigate defenses arising out of their duty to enforce federal law. *See Willingham*, 395 U.S. at 407. "This policy should not be frustrated by a narrow, grudging interpretation of s 1442(a)(1)." *Id.*; *see also Morgan v. Bill Vann Co, Inc.*, C.A. No. 11–0535–WS–B, 2011 WL 6056083, at *3 (S.D. Ala. Dec. 6, 2011) ("Unlike certain other removal provisions, § 1442(a) must be liberally construed in favor of removal.").

Additionally, the thrust of Plaintiff's Motion to Remand is that GE must, in essence, prove its government contractor defense on the merits at the removal stage, or face a remand. To this end, Plaintiff asserts that GE has failed to demonstrate a colorable defense because it has offered no "evidentiary basis" for its assertions that the GE turbines purchased by the Navy had to meet the Navy's prescribed specifications, and that GE conformed to those specifications, and that the government precluded asbestos warnings.

Plaintiff's argument in support of remand is completely misplaced. The Seventh Circuit's holding in *Ruppel*, which Plaintiff ignores,[1] puts to rest the notion that a party relying upon the government contractor defense in support of federal officer removal is required to virtually win its case in order to have it removed. Instead, the party need only demonstrate that the defense is "plausible." *See Ruppel*, 701 F.3d at 1182 (the defense must only be "colorable, instead of 'clearly sustainable'"), *id.* ("If defendants had to virtually win their case before they can have it removed, we would leave nothing for the eventual trial court to decide.") (internal

[1] Plaintiff's failure to candidly disclose and discuss contrary authority represents what the Seventh Circuit has long condemned as "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987).

quotation marks omitted); *see also* 28 U.S.C. § 1445(a) (notice of removal need only contain "a short and plaint statement of the grounds for removal"). With respect to the government contractor defense, the Northern District of Illinois recently stated:

> [Plaintiff] contends that the question now before the Court is governed by *Boyle*, in which the Supreme Court outlined the requirements for a defendant to prevail on a federal contractor defense. While *Boyle* will govern [the defendant's] ultimate defense, it is not controlling at this stage because it does not address the question of jurisdiction—the only question now before the Court. *Ruppel*, 701 F.3d at 1182.

*Totten v. Crane Co.*, No. 13-8157, 2014 WL 1689689, at *2 (N.D. Ill. April 28, 2014).

At this stage, GE need only show that its federal defense is plausible. *Ruppel,* 701 F.3d at 1182. Under these circumstances, as shown by *Ruppel*, it would be reversible error to remand this case to state court.

## II. GE Has Made the Requisite Showing for Federal Officer Removal.

This is a typical GE federal officer removal case involving military equipment manufactured by GE.[2] Plaintiff is a former United States Navy sailor who joined the Navy in 1962. He alleges that he served aboard the USS Wright CC-2 in 1963, and then served aboard the USS Sims DDG-18 until 1966 when he left the Navy. He alleges that he developed an asbestos-related disease as a result of exposure to asbestos-containing materials while serving aboard a Navy warship more than half a century ago. Notably, GE is a manufacturer of the same type of military propulsion equipment that was involved in *Ruppel*. GE manufactured and sold that military equipment to the United States Navy in accordance with highly detailed military specifications under government contracts.

---

[2] GE has removed numerous cases involving identical fact patterns, and there are many decisions upholding such removals by district courts around the country. A sampling of such decisions appears below.

As detailed in its notice of removal, GE has satisfied all requirements for federal officer removal. *See* GE's Notice of Removal, Doc. 1. The procedural requirements were satisfied because the notice was timely filed, and was accompanied by copies of all pleadings and papers on file in the Third Judicial Circuit Court, Madison County, Illinois. *Id.* at ¶¶ 2-6. In addition, GE satisfied all substantive requirements for federal officer removal. Removal is proper under 28 U.S.C. § 1442(a)(1) upon a showing that GE was a: (1) person (2) acting under the United States, its agencies, or its officers (3) that has been sued for or relating to any act under color of such office, and (4) has a colorable federal defense to Plaintiff's claim. *Ruppel*, 701 F.3d at 1180-81; *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989). GE has plausibly alleged each of these elements. *See* Doc. 1 at ¶¶ 10-15.

Plaintiff asserts that GE has failed to show that it has a colorable federal contractor defense and that there is a causal connection between the actions GE took under color of office and the conduct for which Plaintiff has sued. As a threshold matter, GE need not prove its defense at the removal stage. *See* Section I, *supra*. Rather, GE must only show that its defense is "plausible." Under *Boyle*, government contractors are shielded from liability when (1) the United States approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the contractor warned the government about any dangers known to the contractor but not to the government. *Boyle*, 487 U.S. at 512.[3] GE has plausibly alleged each of the *Boyle* elements. *See* Doc. 1 at ¶ 14 (alleging that "GE's Navy turbines that were

---

[3] The federal contractor defense, as established by the Supreme Court, shields government contractors from liability for defects in equipment supplied to the United States. *Boyle*, 487 U.S. at 500. This defense is based on a fairness principle that "it makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the government produces the equipment itself, but now when it contracts for the production." *Id.* at 512. Further, the defense recognizes that the design and manufacture of military equipment is "assuredly a discretionary function" of the government and that this critical governmental function must not be subject to "second-guessing." *Id.* at 511.

manufactured for the U.S. Navy were manufactured in conformity with detailed specifications of the U.S. Navy" and that "GE had no knowledge concerning the potential hazards of asbestos that was not known by the U.S. Navy."), ¶ 10 ("Navy turbines that GE manufactured under contract with the U.S. Navy for installation in U.S. Navy vessels were manufactured to Navy specifications and were subject to strict Navy control and supervision over all aspects of the turbines' design and manufacture, including, without limitation, the presence of asbestos in such turbines and the existence of any warnings affixed to or issued in connection with the turbines."), ¶ 12 ("GE's actions at issue in this suit took place under the direct and detailed control of a federal agency – the United States Navy – as well as several Navy Officers and Navy-employed civilians, all acting under the command of the Secretary of the Navy. These individuals exercised direct control over the design and manufacture of GE Navy turbines, as well as control over all information affixed to that equipment supplied to the Navy. GE's Navy turbines, from which plaintiff asserts a claim for naval asbestos exposure, were manufactured according to the specifications of, and under the direction and control of, the U.S. Navy. Finally, GE Navy turbines were subjected to extensive testing and inspection by the Navy as a prerequisite to its approval, acceptance and use of those turbines aboard Navy ships. In sum, virtually no aspect of the design and manufacture of the Navy steam turbines at issue escaped the close control of the Navy and its officers.").[4]

In further support of its notice of removal, including the assertion of the federal contractor defense and causation, GE supplies as exhibits the affidavit of David Skinner and the

---

[4] The Seventh Circuit has consistently held that the federal contractor defense extends to product liability claims predicated on alleged failure to warn. *See, Ruppel*, 701 F.3d at 1185; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996); *see also, Kerstetter v. Pacific Scientific Co*., 210 F.3d 431, 438-39 (5th Cir. 2000*); In re Joint Eastern and Southern District New York Asbestos Litigation; Grispo v. Eagle-Pitcher,* 897 F.2d 626, 629 (2d Cir. 1990).

declarations of David Hobson, Ben Lehman, and Lawrence Betts, which provide detailed factual support for the allegations in GE's notice of removal.[5] *See* Exs. A-E, attached hereto. Various federal courts have held that the evidence in these Exhibits, and evidence similar it, sufficiently establishes a colorable defense and causation. When plaintiffs have moved to remand in essentially identical cases, GE's removal has been repeatedly upheld by federal courts based upon these and similar affidavits. *See, e.g.*, *Shepherd v. Air & Liquid Sys. Corp.*, No. CA 12-143L, 2012 WL 5874781, at *7 (D.R.I. Nov. 20, 2012) (collecting cases holding that removal was proper where GE relied on affidavits from Hobson, Lehman, and Betts); *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 222-26 (D. Del. 2009) (removal proper where GE relied on affidavits from Hobson, Lehman, and Betts); *Carroll v. Buffalo Pumps, Inc.*, 2008 WL 4793725, at *2-3 (D. Conn. Oct. 27, 2008) (same); *Lewis v. Asbestos Corp.*, No. 10–650 FLW, 2012 WL 3240941, at *4-6 (D.N.J. Aug. 7, 2012) (same); *Morgan*, 2011 WL 6056083, at *5-8, 12 & nn. 6-7 (similar; Hobson and Lehman); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 102-04 (D. Conn. 2007) (similar; Lehman and Betts).

In *Ruppel*¸ the Seventh Circuit found that the affidavits submitted by Westinghouse established a colorable defense on a failure to warn claim. *Ruppel*, 701 F.3d at 1185-86. Similarly here, the affidavit and declarations of Hobson, Skinner, Lehman and Betts, Exhibits A-E, establish that the Navy controlled and supervised, to the most minute detail, all aspects of GE's design and manufacture of steam turbines for Navy ships, to the extent of having resident Navy inspectors stationed at GE's plants. Hobson Decl., Ex. A, at ¶¶ 4-24. This control was

---

[5] "Where exhibits and affidavits clarifying jurisdictional facts from the notice of removal are filed later, 'it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits.'" *Morgan*, 2011 WL 6056083, at *4 (quoting *Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969)); *id.* ("[F]ederal courts have routinely allowed defendants removing on the basis of federal officer jurisdiction either to make an evidentiary showing post-removal or to rely on factual allegations in the notice of removal untethered to specific evidentiary proof."); *Ruppel*, 701 F.3d at 1184 & n.1.

accomplished primarily via a system of highly detailed and stringent military specifications promulgated by the Navy, which were incorporated into the government contracts pursuant to which GE supplied Navy steam turbines. *Id.* at ¶ 8; Skinner Aff., Ex. B, at ¶ 3. The Navy's control extended to all writings (e.g., stenciling, identification plates and manuals) associated with Navy steam turbines, such that GE could not supply any warnings that were not specifically authorized or approved by the Navy without being out of compliance with its government contracts. Lehman Decl., Ex. C, at ¶¶ 6-9; Betts Decl., Ex. D, at ¶ 30.

The Navy's control specifically extended to heat insulation materials that the Navy and its shipbuilders later applied to Navy steam turbines after they had left GE's control and had been installed aboard ships. Skinner Aff., Ex. B, at ¶ 4. Those materials were supplied and installed pursuant to military specifications that were part of the separate government contracts between the Navy and its shipbuilders. *Id.* at ¶¶ 3-4. GE manufactured and delivered steam turbines to the Navy as "bare metal." *Id.* at ¶ 4. It did not manufacture or sell Navy steam turbines with heat insulation. *Id.* Finally, the two Betts Declarations include an exhaustive review of the knowledge of the United States government and the Navy concerning the hazards of the use of asbestos-containing insulation products. Betts Decl., Ex. D, at ¶¶ 7-29; Betts Decl., Ex. E, at ¶¶ 14-47. Dr. Betts demonstrates that there were no asbestos-related dangers known to GE that were not also known by the Navy. Betts Decl., Ex. D, at ¶¶ 7-29, 31; Betts Decl., Ex. E, at ¶¶ 48-61. Thus, as courts have repeatedly held, this Court should find that these affidavits are sufficient to establish that GE has a plausible federal officer defense and causation, and therefore that GE properly removed this action to this Court.

As support for his contention that the Navy did not control warnings concerning asbestos exposure, Plaintiff references an undated, excerpted response to a request for admissions and

interrogatories on to an unknown claim filed against the United States in a Court of Claims action, *GAF Corp. v. The United States of America,* No. 287-83-C. He asserts that this document somehow shows that the Navy "never forbade" GE from including warnings with its turbines. Not only is this claim unsupportable in light of the affidavit and declarations attached hereto at Exhibits A-E, his reliance on this material is simply misplaced. Notably, Plaintiff does not include the referenced Mil-Std-129 referenced in this request for admission. Moreover, the United States denied the request for admission stating that "MIL-STD-120 speaks for itself…" See, Doc. 60, Ex. A. That denial, is not, as Plaintiff asserts, an admission that the Navy would have permitted GE to affix warnings to its turbines.

As the Exhibits to this response provide, the Navy knew more about the applications of asbestos and the health effects from exposure than did GE. Betts Decl., Ex. D, at ¶¶ 7-29, 31; Betts Decl., Ex. E, at ¶¶ 48-61. The Navy exercised intense control over all aspects of the design and manufacture of Navy turbines and over communications between equipment manufacturers (such as GE) and Navy personnel. Hobson Decl., Ex. A, at ¶ 20. Further, GE was not permitted, under the detailed Navy specifications to affix *any* type of warning or caution statement to a piece of equipment other than those expressly specified by the Navy. *Id.* at ¶¶20-21. The control exercised by the Navy included the decision of what warnings should or should not be included, and equipment suppliers were prohibited from providing any warnings without the consent and approval of the Navy. Lehman Decl., Ex. C, at ¶¶ 7-8. The Navy did not want unsolicited and potentially inconsistent warning information from equipment manufacturers regarding asbestos insulation. Betts Decl., Ex. D, at ¶30; Betts Decl., Ex. E, at ¶¶76-80. Therefore, this Court should find that GE has sufficiently established that its actions and omissions were subject to specific government regulation and control, and reject Plaintiff's

claims that GE has not established a plausible federal contractor defense, including a defense to Plaintiff's failure to warn claims. Moreover, GE has established a causal nexus between Plaintiff's claims and the actions GE took under color of office because GE has alleged that the Navy asserted complete control over virtually every aspect of the design, manufacture, and warnings associated with the GE products at issue in this case.

## CONCLUSION

Wherefore, GE respectfully requests that this Court deny Plaintiff's Motion to Remand and for such other and further relief as this Court deems just and proper.

ARMSTRONG TEASDALE LLP

By: */s/ Raymond R. Fournie*
Raymond R. Fournie #3126094
Anita M. Kidd #6229585
Melanie R. King #6192411
Julie Fix Meyer #6189064
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (facsimile)
rfournie@armstrongteasdale.com
akidd@armstrongteasdale.com
mking@armstrongteasdale.com
jfixmeyer@armstrongteasdale.com

ATTORNEYS FOR DEFENDANT
GENERAL ELECTRIC COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2015, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Raymond R. Fournie*