# EXHIBIT B

# AFFIDAVIT OF DAVID R. SKINNER

STATE OF NEW YORK       §
                        §
COUNTY OF SCHENECTADY   §

David R. Skinner states as follows:

1. I am a mechanical engineer, with a Bachelor of Science degree in Engineering Mechanics from Lehigh University and a Master of Science degree in Mechanical Engineering from the University of Vermont. I was employed by General Electric Company ("GE") in various engineering positions from 1967 until my retirement in 2005. More than 30 of those years were spent in GE's steam turbine business. Of those 30 plus years in the steam turbine business, approximately 15 of them were spent working in components of that business that designed and manufactured steam turbines for the United States Navy. Since August 2005, I have continued to perform consulting work for GE in connection with cases involving GE steam turbines. During my more than three decades of work in GE's steam turbine business and my subsequent years of steam turbine consulting, I have studied GE steam turbines and the steam turbine business and have gained substantial experience and knowledge about those subjects, including the contracting process, design, manufacture, installation, operation, and maintenance of all types of GE steam turbines.

2. Most Navy warships built since the World War II era have used steam turbines for propulsion. Even today, although other technologies are increasingly used for naval propulsion, all nuclear powered war ships employ steam turbines for propulsion. Smaller steam turbines are also employed aboard steam ships in the generation of shipboard electricity. These Navy turbines are mechanical devices made of steel. Their purpose is to convert the heat energy

contained in steam into mechanical energy that can be harnessed to drive a ship's propellers or to turn a generator to make electricity for shipboard use. Inside the hull of each steam powered warship, the Navy designs and installs a complex steam system using components procured from numerous manufacturers. Navy turbines are one such component that the Navy incorporates into its overall shipboard steam system. Navy turbines have been manufactured by various American companies over the decades. GE was one such company until it exited the Navy turbine business in 1996.

3. The design and construction of a Navy warship is a complex process that takes years. To carry out this project, the Navy has its own engineers, both naval officers and civilian employees, and also engages the services of outside naval architecture firms, such as Gibbs & Cox, who collaborate to translate the concept for the new ship into a design that can be constructed by a shipyard under the Navy's direction. The Navy, working in conjunction with the shipyard it has contracted the build the ship, then acquires from a multitude of vendors the thousands of pieces of equipment needed to build the ship. Those acquisitions are accomplished through a government contracting process. The heart of that process is the Military Specification ("MilSpec"). There are thousands of MilSpecs, and they specify in minute detail the Navy's requirements for shipboard equipment. Vendors must comply with applicable MilSpecs for the equipment they provide, and the MilSpecs become part of the government contract for all major equipment purchases by the Navy, including steam turbines.

4. The MilSpec governing Navy propulsion turbines provides, "Heat insulation and lagging will be provided by the shipbuilder." In compliance with this Navy specification, Navy turbines manufactured by GE did not have any heat insulation materials (whether containing asbestos or otherwise) installed on them at the time they left GE's control upon being shipped

from the GE plant. GE did not manufacture or sell Navy turbines with heat insulation. Navy turbines manufactured by GE left the GE factory and were shipped "bare metal," meaning they had only a coat of paint on the exterior surface. Any heat insulation materials that were applied to Navy turbines manufactured by GE would have been supplied and installed by the Navy's shipbuilder after those turbines had left GE's manufacturing plant, had been delivered to the shipyard, and had been installed aboard ship and tested. The process may be summarized as follows: (a) a Navy turbine would be manufactured by GE in compliance with the governing MilSpecs, pursuant to a government contract; (b) that Navy turbine would leave the GE factory in a "bare metal" condition and would be shipped to the Navy's designated shipyard where the ship was to be constructed; (c) at that shipyard, the Navy turbine would be placed into storage by the shipbuilder until ship construction reached the point where it was time to install the turbine aboard ship; (d) at that point, the shipbuilder's personnel would use a crane to lift the Navy turbine into the ship's hull and install it on a foundation that had been constructed in the engine room to receive it; (e) sometime thereafter, once all the other necessary steam system components had been installed and were online, such as boilers, condensers, and piping, the turbine would be tested by the shipbuilder; and (f) sometime after that, assuming the test of all systems was satisfactory, heat insulation materials would be applied to certain components of the turbine, as well as to numerous other pieces of equipment and piping systems throughout the engine room. The nature of those heat insulation materials would be specified by the Navy to its shipbuilder through a set of MilSpecs governing such materials. Those heat insulation materials would be supplied by the Navy's shipbuilder in compliance with those MilSpecs, and the application of those materials would be carried out by the Navy's shipbuilder's personnel. GE was not involved in this process of supplying and installing heat insulation materials.

5. I have personal knowledge of the foregoing matters and am competent to testify thereto. I declare under penalty of perjury that the foregoing it true and correct.

*David R. Skinner*

David R. Skinner

Executed on: February 18, 2015.