# EXHIBIT C

## DECLARATION OF ADMIRAL BEN J. LEHMAN

I, Ben J. Lehman, declare as follows:

1.      I am a retired Rear Admiral of the United States Navy.  Before joining the Navy in 1942, I received a Bachelor of Science degree in Mechanical Engineering from the College of the City of New York.  After joining the Navy, I was ordered to study naval architecture and marine engineering at Massachusetts Institute of Technology (MIT).  Later, I completed the United States Post-Graduate School program in Naval Engineering Design.  I received a Master of Science in Mechanical Engineering from Harvard University in 1949.  I have also studied Design Philosophy and Advanced Stress Analysis at Stanford University.

2.      While in the United States Navy, I served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944, as a Ship Superintendent at the San Francisco Naval Shipyard from 1950 and 1952, and as a Planning Officer at the Assistant Industrial Manager Office in San Francisco from 1952 to 1954.  I was promoted to Rear Admiral in 1977 in the Naval Reserve.  I worked as an engineer at General Electric Company between 1946 and 1948.  I held the positions of Director of Engineering and Vice-President of Engineering at two major ship building companies between 1969 and 1975. During all these periods I have maintained close contact with the U.S. Navy, including periods of active duty in the Department of Defense and the Naval Sea Systems Command in Washington, D.C.  I have been an independent consultant since 1975.  Attached hereto as Exhibit A is a true and correct copy of my current curriculum vitae.

3.      I submit this Declaration to attest to the level of supervision and control by the United States Navy and its officers over every aspect of the design and manufacture of equipment intended for installation on Navy vessels.  I have personal knowledge of the facts contained herein.

1    4.    During my tenure as a Ship Superintendent in the Navy, I was

2    personally involved with the oversight of ship alterations and equipment overhauls

3    at both the New York Naval Shipyard (formerly the Brooklyn Navy Yard) and at

4    the San Francisco Naval Shipyard (Hunters Point).  Any deviation from military

5    specifications of equipment to be installed on ships would result in significant

6    problems and rejection of the equipment.  The Navy could not, and did not, permit

7    its contractors to implement any changes because every aspect of every item of

8    equipment had to be (1) functionally compatible with every other piece of

9    equipment and with available materials from the Navy Supply System; (2)

10   compatible with shipyard practices, training, tools and capabilities; and (3)

11   consistent with the ability of the crew to maintain the ship during its service when

12   shipyard help was unavailable using materials carried onboard.

13   5.    I observed during my service in New York Naval Shipyard in 1943

14   and 1944 that ships built for service during and after WWII (and later) were built

15   in "classes" and the ships in each "class" were virtually identical, even though

16   they were built in different shipyards.  This shows the extent of control exercised

17   by the Navy's Bureau of Construction and Repair and Bureau of Engineering

18   before WWII, and later as the Bureau of Ships, during WWII and all subsequent

19   time periods.  I am certain from personal observation that this level of control did

20   exist.

21   6.    Even before the 1940s, and afterward, the Navy had complete control

22   over every aspect of each piece of equipment used on Navy ships.  Military

23   specifications governed every characteristic of this equipment, including the

24   instructions and warnings for equipment.  Drawings for nameplates, texts of

25   instruction manuals, and every other document relating to the construction,

26   maintenance, and operation of the vessel were approved by the Navy.  This control

27   included the decision of what warnings should or should not be included.  Thus,

28

1   the Navy controlled the decision making with respect to instructions and warnings

2   on every piece of equipment.

3       7.      Furthermore, the Navy had specifications as to the nature and content

4   of all written material that was delivered with each piece of equipment, including

5   pumps and turbines and the accompanying manuals.  The Navy was intimately

6   involved with and had final approval of all technical and engineering drawings,

7   operating manuals, safety or hazard information, and any other written information

8   that accompanied a piece of equipment.  The Navy determined the nature of

9   hazards to be subject to any precautionary labeling and the content of any such

10   labeling.  The "General Specifications" mandated that all equipment manuals must

11   be approved by the Navy's Bureau of Ships and that no changes could be made

12   without the Navy's approval.  When issued later, MIL-M-15071D confirmed this.

13   Summarizing: The Navy dictated every aspect of the design, manufacture,

14   installation, overhaul, written documentation, and warnings associated with its

15   ships and did not permit deviation by any of its contractors.

16       8.      Based on my experience, professional training, education and

17   research, it is my opinion that equipment suppliers were prohibited from providing

18   any warnings on or to accompany equipment supplied to the Navy without the

19   consent and approval of the Navy.  Moreover, given necessary performance needs

20   and capabilities of the shipboard equipment, and the ships and Navy personnel,

21   certain types of warnings were simply not approved by the Navy such as, but not

22   limited to, any warnings associated with hazards from asbestos, which might have

23   included recommendations for various types of respiratory protection and for

24   particular repair and maintenance practices.  A requirement for effective

25   respiratory protection equipment or devices would have required the Navy to

26   furnish equipment which it did not then have, and which would have been

27   impractical to use under shipboard conditions.  A requirement for special repair

28   and maintenance practices might have required, for example, the use of portable

DECLARATION OF BEN J. LEHMAN, REAR ADMIRAL U.S. NAVY, RET.

1  ventilation equipment for dust removal, which the Navy would have found

2  impossible under many foreseeable shipboard conditions even if it could have

3  procured the equipment.  No advice on how to avoid exposure to the hazards of

4  asbestos consistent with the need to operate and maintain the ship is known to me.

5  This is because of the inability to effectively and comprehensively observe,

6  implement, and comply with such recommendations under the multitude of

7  varying conditions likely to be encountered on Navy ships at sea, and especially at

8  war.  A Navy warship is a highly regulated workspace, subject to strict military

9  discipline and chain of command, and the Navy -- not equipment manufacturers --

10  informed sailors of the hazards the Navy deemed significant in the special

11  environment of a warship, and did so in a manner it deemed appropriate to the

12  ship's mission.

13       9.     Navy equipment suppliers like GE simply could not affix warnings

14  about asbestos insulation on its equipment, or include warnings about asbestos

15  insulation in its equipment manuals, because the Navy did not request any such

16  warnings about asbestos insulation from equipment suppliers like GE.  If GE were

17  to supply such extraneous information, this action would have taken the item and

18  its manuals out of compliance with the specifications and would have resulted in

19  the rejection of the item and its manual.

20       I declare under penalty of perjury under the laws of the United States that

21  the foregoing is true and correct.

22       Executed this 20th day of December, 2010, at Stateline-Zephyr Cove,

23  Nevada.

24

25

26  Ben J. Lehman, Rear Admiral U.S. Navy, Ret.

27

28

SF/1911966v1                                    -4-

DECLARATION OF BEN J. LEHMAN, REAR ADMIRAL U.S. NAVY, RET.